**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CARMAX AUTO SUPERSTORES,
INC.; and CARMAX BUSINESS
SERVICES, LLC,

                    Plaintiffs,

v.                                         Case No. 6:15-cv-898-Orl-37TBS

STARMAX FINANCE, INC.,

                    Defendant.

_____

**ORDER**

This cause is before the Court on the following:

1.      Plaintiffs' Motion for Fees and Costs Against StarMax Finance, Inc. (Doc. 19), filed December 10, 2015;

2.      U.S. Magistrate Judge Thomas B. Smith's Report and Recommendation (Doc. 20), filed December 17, 2015; and

3.      Plaintiffs' Objection to Report and Recommendation (Doc. 21), filed December 30, 2015.

Upon consideration, the Court finds that Plaintiffs' objection is due to be sustained, the Report and Recommendation is due to be rejected, and the Motion is due to be granted.

**BACKGROUND**

Plaintiffs—CarMax Auto Superstores, Inc. and CarMax Business Services, LLC (collectively, "**CarMax**")—initiated this trademark infringement action against Defendant StarMax Finance, Inc. ("**StarMax**") on June 4, 2015. (Doc. 1 ("**Complaint**").) CarMax

currently operates more than 150 used car superstores throughout the United States, including fourteen stores in Florida and one store in Orlando. (*Id.* ¶ 1.) In connection with this business, CarMax owns more than twenty-eight federally registered marks that contain the term "CARMAX" ("**CarMax Design Marks**"). (*Id.* ¶ 12.) At least four of the CarMax Design Marks are associated with a blue, yellow, and white design, which consists of the word "CARmax" inside a blue rectangle, where "CAR" appears in yellow upper case letters, and "max" is written in white lower case letters underscored by yellow dashes ("**BYW CARmax Design Marks**"). (*Id.*) Since 1993, CarMax has used one or more of the CarMax Design Marks continuously and in good faith. (*Id.* ¶ 16.) According to the Complaint, the CarMax Design Marks are distinctive, well known, and "associated with a reputation for quality used cars at a no haggle price." (*Id.* ¶ 18.)

StarMax also offers services related to the sale of used vehicles. (*Id.* ¶ 20.) In doing so, StarMax uses marks confusingly similar to the CarMax Design Marks ("**Infringing Marks**"). (*Id.*) Indeed, though StarMax has not obtained a license or permission from CarMax, the Infringing Marks use the same font, capitalization, and color scheme as the BYW CARmax Design Marks, save for two exceptions. (*See id.* ¶¶ 21, 22, 49, 50.) First, the Infringing Marks begin with the letters "ST" rather than "C." ("**Prefix Difference**"). (*Id.* ¶ 49.) Additionally, the Infringing Marks contain the term "finance" in small yellow font as the first dash in the line of yellow dashes under the term "max." (*Id.* ¶ 50.) However, CarMax alleges that: (1) despite the Prefix Difference, the terms "StarMax" and "CarMax" are phonetically similar, which adds to the likelihood of confusion between the Marks; and (2) the inclusion of the term "finance" in the Infringing Marks does not adequately distinguish the Infringing Marks from the CarMax Design Marks. (*Id.* ¶¶ 49, 50.)

CarMax represents that its customers have complained about StarMax and have expressed confusion as a result of the Infringing Marks. (*Id.* ¶ 25.) Consequently, in February 2013, February 2014, and January 2015, CarMax sent StarMax written correspondence: (1) notifying StarMax that the Infringing Marks were causing confusion in the marketplace and violated CarMax's rights; and (2) demanding that StarMax cease use of the Infringing Marks ("**Pre-Suit Notification**"). (*See id.* ¶¶ 25–29.) During this time, the parties also exchanged numerous emails and telephone calls, and StarMax promised to remedy the alleged infringement of the CarMax Design Marks. (*Id.* ¶¶ 27, 30.) Despite such promises, StarMax continued to use the Infringing Marks; thus, CarMax filed the instant suit. (*See id.* ¶¶ 27, 29–31.)

The four-count Complaint alleges claims against StarMax for: (1) infringement of CarMax's federally registered trademarks; (2) false designation of origin and unfair competition; (3) common law trademark infringement; and (4) common law unfair competition. (*Id.* ¶¶ 36–75.) Most notably, CarMax asserts that StarMax's "acts of trademark infringement have been committed with the intent to cause confusion, mistake, or deception," in connection with the sale of goods and services that directly compete with those offered by CarMax. (*Id.* ¶¶ 42, 57.) The Complaint also includes side-by-side images of the CarMax Design Marks and the Infringing Marks as an illustration of the confusing similarity of the marks. (*Id.*, ¶ 22.) Further, CarMax alleges that StarMax's continued use of the Infringing Marks is willful, deliberate, and intentional, as evidenced by StarMax's broken promises to remedy the infringement in response to the Pre-Suit Notification. (*See id.* ¶¶ 30, 42, 60.)

As StarMax failed to file a responsive pleading within twenty-one days after it was

served with the Complaint, the Clerk entered default against StarMax pursuant to Federal Rule of Civil Procedure 55(a). (Doc. 12.) CarMax then moved for default judgment pursuant to Rule 55(b), which the Court granted ("**Default Judgment Order**"). (Docs. 13, 16.) Contemporaneously with the Default Judgment Order, the Court issued a permanent injunction enjoining StarMax from further infringement of the CarMax Design Marks ("**Injunction**"). (Doc. 17.)   Final judgment was subsequently entered in favor of CarMax on all four counts of the Complaint. (Doc. 18.)

On December 10, 2015, CarMax moved for attorney fees and costs on the ground that the instant action constitutes an "exceptional" case under the Lanham Act. (Doc. 19 ("**Motion**").) After considering the totality of the circumstances, U.S. Magistrate Judge Thomas B. Smith issued a report recommending that the Court: (1) find that this action is not exceptional; (2) deny CarMax's request for attorney fees; (3) grant CarMax's request for filing fees; and (4) deny CarMax's request for an additional $80 in claimed costs due to the absence of supporting documentation. (Doc. 20 ("**R&R**").) Plaintiff timely objected. (Doc. 22 ("**Objection**").)

## STANDARDS

When a party objects to a magistrate judge's findings, the district court must "make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The district court must consider the record and factual issues based on the record independent of the magistrate judge's report. *Ernest S. ex rel. Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990).

**DISCUSSION**

CarMax primarily objects to Magistrate Judge Smith's finding that the instant action is not an exceptional case under the Lanham Act and, therefore, does not warrant an award of attorney fees. (*See* Doc. 21.) Specifically, CarMax argues that this case is exceptional in light of: (1) its extra-judicial efforts over a three-year period to halt StarMax's infringing conduct; (2) StarMax's continued infringement despite its pre-suit promises to cease infringement, the initiation of this action, and the Court's Injunction; (3) the stark discrepancy between the parties' litigation positions; and (4) the unreasonable way in which StarMax has handled the matter. (*Id.* at 2, 8.) For the reasons explained below, the Court agrees with CarMax that this is an exceptional case warranting an award of attorney fees.

**I.   *Octane Fitness* Standard**

Pursuant to the fee-shifting provision in 15 U.S.C. § 1117(a), the Court may award reasonable attorney fees to the prevailing party in exceptional trademark infringement cases. Prior to the U.S. Supreme Court's decision in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), the U.S. Court of Appeals for the Eleventh Circuit defined "an exceptional case" as "one that can be characterized as malicious, fraudulent, deliberate and willful." *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1232, 1335 (11th Cir. 2001). However, construing a similar fee-shifting provision for patent infringement actions, the *Octane* Court applied a more liberal definition—holding that "an exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*,

134 S. Ct. at 1756. Under this standard, "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*

In light of the almost identical fee-shifting provisions under the Lanham and Patent Acts, courts within this Circuit and elsewhere have applied the *Octane Fitness* standard in considering whether attorney fees are warranted in trademark infringement actions.[1] In the absence of Eleventh Circuit guidance, the Court similarly elects to apply the *Octane Fitness* standard in assessing the instant Motion.

Upon consideration, the Court finds that both *Octane Fitness* factors are met here. First, the substantive strength of CarMax's litigating position distinguishes this action from others. A side-by-side comparison of the CarMax Design Marks and the Infringing Marks—as provided in the Complaint (Doc. 1, p. 7) and the Objection (Doc. 21, p. 5)— easily reveals the strength of CarMax's infringement claims. Further, pursuant to the Default Judgment,[2] CarMax did not license or otherwise authorize StarMax to use the CarMax Design Marks or any confusingly similar marks. (Doc. 1, ¶ 23.) Given the direct competition of the goods and services offered by CarMax and StarMax, the Court finds that StarMax deliberately intended to create customer confusion through use of the

---

[1] *See, e.g.*, *Georgia–Pacific Consumer Prods. LP v. Von Drehle Corp.*, 781 F.3d 710, 720–21 (4th Cir. 2015); *Donut Joe's, Inc. v. Interveston Food Servs.*, 116 F.3d 1290, 1292–94 (N.D. Ala. 2015); *RCI TM Corp. v. R & R Venture Grp., LLC*, No. 6:13-cv-945-Orl-22, 2015 WL 668715, at *9–11 (M.D. Fla. Feb. 7, 2015); *High Tech Pet Prods., Inc. v. Shenzhen Jianfeng Elec. Pet Prods. Co.*, No. 6:14-cv-759-Orl-22TBS, 2015 WL 926023, at *1–2 (M.D. Fla. Mar. 4, 2014).

[2] "A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F. 3d 1298, 1307 (11th Cir. 2009) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

Infringing Marks. (*See* Doc. 1, ¶¶ 42, 57.) Not only did StarMax have constructive knowledge of the CarMax Design Marks by virtue of CarMax's federal registrations (*see* Doc. 1, ¶ 47), but it also had actual knowledge of the impropriety of its conduct, as evidenced by Plaintiff's Pre-Suit Notification efforts and StarMax's repeated promises to remedy its actions. Indeed, the Court is unable to conceive of any non-meritless defense that would have been available to StarMax in this action.

The present facts are similar to those presented in *High Tech Pet Products*, *Inc. v. Shenzhen Jianfeng Electronic Pet Product Company, Ltd*. *See* No. 6:14-cv-759-Orl-22TBS, 2015 WL 926048 (M.D. Fla. Feb. 12, 2015), *adopted and confirmed by* 6:14-cv-759-Orl-22TBS, 2015 WL 926023 (M.D. Fla. Mar. 4, 2015). In *High Tech*, the plaintiff—a manufacturer of electronic pet fencing and behavior modification systems—initiated a trademark infringement action against entities that used the plaintiff's registered and unregistered marks, as well as confusingly similar trade dress, in advertising and selling their own electronic pet fencing and behavior modification systems. 2015 WL 926048, at *1. As in the instant action, the *High Tech* defendant failed to answer the complaint and defaulted. *Id.* Upon motion by the plaintiff, the *High Tech* court entered: (1) default judgment in favor of the plaintiff; and (2) a permanent injunction enjoining the defendant from further acts of infringement. 2015 WL 926023, at *2–3. Ultimately, the *High Tech* court found that the case was exceptional and imposed attorney fees based on the substantive strength of the plaintiff's litigating position and the "significant disparity of the merits of the parties' respective positions." *Id.* at *2. In doing so, the *High Tech* court explained that the flagrant, uncommon, rare and unordinary nature of the defendants' infringement made the case exceptional—not the fact of the

defendant's default. *Id.* at *2.

Though the Court agrees with Magistrate Judge Smith's conclusion that the entry of default judgment does not automatically translate into a finding that a case is exceptional (*see* Doc. 20, p. 6), the Court finds that the totality of the circumstances in the present action are akin to those in *High Tech*. As previously intimated, both CarMax and StarMax offer competing products and services. It is no mistake that their name and marks are confusingly similar. Consequently, the exceptional disparity between the parties' litigating positions warrants an award of attorney fees.

Courts have found that similar imbalances between parties' litigating positions are sufficient to award attorney fees under the Lanham Act. *E.g.*, *Donut Jones*, 116 F. Supp. 3d at 1293–94; *High Tech*, 2014 WL 926203, at *2. However, the Court also finds the case to be exceptional under the second factor of *Octane Fitness*. Although the Supreme Court characterized this factor as the "unreasonable manner in which the case was *litigated*," *Octane Fitness*, 134 S. Ct. at 1756 (emphasis added), the *Octane* Court also authorized district courts to award fees "in the rare case in which a party's unreasonable *conduct*—while not necessarily independently sanctionable—is nonetheless so exceptional as to justify an award of fees," *id.* at 1757 (emphasis added). As such, the Court agrees with CarMax that the unreasonable conduct referenced by the *Octane* Court extends to all circumstances surrounding the litigation event, not solely the conduct within the confines of the immediate litigation. (*See* Doc. 11, p. 21.)

Considering the totality of the circumstances, StarMax's conduct was, and continues to be, patently unreasonable. Despite more than two years of extra-judicial efforts to resolve this issue without litigation, StarMax remained indifferent to CarMax's

8

intellectual property rights in its Design Marks, forcing StarMax to incur attorney fees to enforce its rights. Then, despite CarMax's communication with StarMax regarding the initiation and progress of the instant suit, StarMax continued to ignore both the suit and the Court's Default Judgment and Injunction. While, as Magistrate Smith contends, StarMax's decision to default may be preferable to litigating a meritless position (Doc. 20, p. 6), the Court is especially troubled by its decision to continue to infringe the CarMax Design Marks despite years of pre-suit notification and communication, initiation of a federal lawsuit, the entry of default judgment, and a Court-issued injunction. Indeed, the Court issued the Injunction on December 1, 2015 (Doc. 17), yet documentation submitted by CarMax demonstrates that StarMax continued to use the Infringing Marks on its website as late as December 29, 2015 (Doc. 21-1). Accordingly, the Court finds the instant action to be an exceptional case under the Lanham Act and finds that the Motion for attorney fees is due to be granted.

## II.   Reasonableness of Attorney Fees

Having determined that CarMax is the prevailing party and is otherwise entitled to an award of attorney fees, the Court must now determine whether the fees requested are reasonable. "The first step in computing a reasonable fee is to determine the lodestar, which is the product of the number of hours reasonably worked by a lawyer and a reasonable hourly rate." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

"The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Id.* "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Id.* At a minimum, satisfactory evidence "is more than the affidavit of the attorney performing the work." *Id.* Nonetheless, the Court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to the value." *Id.* at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

In its Motion, CarMax requests a total of $25,936.60 in attorney fees. (Doc. 19, p. 1.) Specifically, CarMax requests: (1) $3,118 for work performed by the law firm of Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A. ("**Allen Dyer**"); and (2) $22,818.60 for the work performed by the law firm of Parker Poe Adams & Bernstein LLP ("**Parker Poe**"). (*See* Doc. 19-1.) In support, CarMax submitted: (1) detailed billing records from Allen Dyer and Parker Poe; (2) a declaration from Parker Poe attorney Christopher M. Thomas ("**Thomas**"); (3) a declaration from Allen Dyer attorney Stephen H. Luther ("**Luther**"); and (4) a declaration from attorney David P. Hathaway ("**Hathaway**"). *Id.*

According to Luther's declaration, he is a shareholder at Allen Dyer—the largest intellectual property boutique firm in the State of Florida. (*Id.* at 52.) He has more than fourteen years of experience in intellectual property litigation, including litigation involving trademark infringement. (*Id.*) Luther's declaration and billing records represent that Luther billed 8.9 hours at a rate of $345 an hour, while Allen Dyer paralegal, Shelley Hotz, billed 0.5 hours at a rate of $95 an hour. (*Id.* at 53–61.)

Thomas is a partner at Parker Poe with more than twelve years' experience in trademark infringement litigation. (*Id.* at 2.) Thomas's declaration and billing records reflect that he billed 53.1 hours at the rate of $306 an hour, staff attorney Michael J. Crook ("**Crook**") billed 26.2 hours at the rate of $250 an hour, and paralegal, Candace Mayhew ("**Mayhew**") billed 0.2 hours at the rate of $100 an hour. *Id.* at 2–50. Crook has been licensed to practice law in North Carolina since 2012. (*Id.* at 2.) He practices in the area of civil litigation and handles a wide variety of civil disputes. (*Id.* at 2–3.) Mayhew is certified by the North Carolina State Bar Board of Paralegal Certification and has experience with intellectual property litigation in federal courts. (*Id.* at 3.)

CarMax retained Hathaway as an independent expert witness on the amount of reasonable attorney fees in the Orlando market. (*Id.* at 63.) Hathaway has practiced in Central Florida for approximately sixteen years. (*Id.*) He is currently a shareholder of Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A, where he serves as chair of the litigation department. (*Id.*) His practice involves counselling clients on intellectual property matters. (*Id.*) Based on this experience in Central Florida, he opines that the range of prevailing market rates for attorneys with comparable experience, skill, and reputation is as follows: (1) $325 to $395 per hour as to Luther; (2) $335 to $400 per hour as to Thomas; (3) $225 to $275 per hour as to Crook; and (4) $100 to $180 per hour as to paralegals of similar experience as Mayhew and Hotz. (*Id.* at 65.)

The rates charged by the attorneys and paralegals in the instant action fall well within these ranges and even below the prevailing market rates for Thomas and Hotz. Thus, upon consideration of Hathaway's declaration and the Court's own familiarity with the prevailing market rates for attorneys with similar experience, skill, and reputation in

the Orlando region, the Court finds the rates billed to be reasonable.

"The next step in the computation of the lodestar is the ascertainment of reasonable hours." *Norman*, 836 F.3d at 1301. To this point, Hathaway reviewed CarMax's pre-litigation efforts at resolution, as well as the filings and briefing submitted after CarMax initiated suit. (Doc. 19-1, p. 66.) Ultimately, Hathaway opined that a reasonable number of hours for the work performed in this action would normally range from 75 to 125 hours ("**Reasonable Hour Range**"). (*Id.*) The attorneys in this case billed a total of 79.5 hours—an amount at the bottom of the Reasonable Hour Range. The Court has also reviewed the billing records provided by CarMax. In light of Hathaway's conclusion as to the Reasonable Hour Range and the Court's own review of the billing records, the Court concludes that hours worked by the attorneys in this case were reasonable.

Multiplying the rates billed by the amount worked, the lodestar is $25,936.60. However, "the court has the opportunity to adjust the lodestar to account for other considerations that have not yet figured in the computation, the most important being the relation of the results obtained to the work done." *Dillard*, 213 F.3d at 1353. "If the result was excellent, then the court should compensate for all hours reasonably expended." *Norman,* 836 F.2d at 1302. On the other hand, "[i]f the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive." *Id.* Upon consideration of the outcome of this action—which yielded a Default Judgment in favor of CarMax and a permanent Injunction against StarMax—the Court sees no reason to depart from the lodestar. The Court will, therefore, award CarMax $25,936.60 in attorney fees.

### III.    Costs

Finally, CarMax requests $480 in costs pursuant to Federal Rule of Civil Procedure 54(d). (Doc. 19, p. 20.) "Generally, [Rule 54(d)] authorizes an award of costs to prevailing parties as a matter of course, while 28 U.S.C. § 1920 enumerates the types of costs that may be recovered." *Tiramisu Int'l, LLC v. Clever Imports*, *LLC*, 741 F. Supp. 2d 1279, 1297–98 (S.D. Fla. 2010). Under § 1920, recoverable costs include:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under [28 U.S.C. § 1923]; [and]
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28 U.S.C. § 1828].

Here, CarMax requests: (1) $400 for its filing fee; and (2) $80 for the cost of its third-party process server. (*See* Doc. 22.) The face of the docket confirms that CarMax paid a $400 filing fee to initiate this suit. (*See* Docket Entry Text at Doc. 1.) However, Magistrate Judge Smith recommends that the Court deny CarMax's request for the $80 process service fee as CarMax failed to submit any supporting documentation. (Doc. 20, p. 7.) CarMax has since remedied this deficiency by submitting an invoice for the process service fee. (*See* Doc. 22-1.) Both the filing fee and the process service fee are recoverable under § 1920(1). *See Tiramisu*, 741 F. Supp. 2d at 1298. As such, the Court finds that CarMax is entitled to $480 in costs pursuant to Rule 54(d).

**CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1.    Plaintiffs' Objection to Report and Recommendation (Doc. 21) is **SUSTAINED**.

2.    U.S. Magistrate Judge Thomas B. Smith's Report and Recommendation (Doc. 20) is **REJECTED**.

3.    Plaintiffs' Motion for Fees and Costs Against StarMax Finance, Inc. (Doc. 19) is **GRANTED**.

4.    The Court finds that an award of $25,936.60 in attorney fees is reasonable and that Plaintiffs are entitled to $480 in costs.

5.    The Clerk is **DIRECTED** to enter judgment in favor of Plaintiffs CarMax Auto Superstores, Inc. and CarMax Business Services, LLC and against StarMax Finance, Inc. in the following amounts:

    a.    $22,818.60 in attorney fees.

    b.    $480 in costs.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on June 21, 2016.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record